**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| DEAMBER D. O'NEAL-FELTON,<br>Plaintiff,<br><br>vs.<br><br>WK KELLOGG CO. and<br>KELLOGG USA LLC,<br>Defendants. | Case No. __________<br><br>COMPLAINT AND<br>JURY DEMAND |

## INTRODUCTION

1. Plaintiff DeAmber D. O'Neal-Felton brings this action against Defendants WK Kellogg Co. and Kellogg USA LLC for unlawful interference and retaliation under the Family and Medical Leave Act (FMLA), race discrimination and race-based retaliation under 42 U.S.C. § 1981, retaliation and discrimination under Title VII, age discrimination under the ADEA, and related Nebraska-law employment discrimination and retaliation claims.

2. This case arises from Defendants' treatment of Plaintiff after she complained about workplace discrimination, harassment, and retaliation; pursued grievances and administrative charges; and sought and used protected medical leave. Defendants used discipline, attendance points, leave administration, training records, system access, and job-posting procedures to suspend Plaintiff pending termination, treat her as discharged, and cut off wages, benefits, and employment opportunities.

3. Plaintiff pleads this matter based on information presently available and reserves the right to amend after receiving Defendants' native timekeeping records, leave-administration records, payroll records, grievance files, discipline files, communications with MetLife, and communications among human-resources, labor-relations, management, and union personnel.

## PARTIES

4. Plaintiff DeAmber D. O'Neal-Felton is an individual resident of Omaha, Nebraska. Plaintiff is Black, female, and over the age of forty. She worked for Kellogg at its Omaha/Ralston, Nebraska cereal-manufacturing facility beginning on or about March 7, 2022.

5. Defendant WK Kellogg Co. is a corporation that conducted business in Nebraska and, directly or through affiliated entities, operated the Kellogg Omaha/Ralston facility where Plaintiff worked.

6. Defendant Kellogg USA LLC is an entity identified in employment and unemployment records as an employer or chargeable employer for Plaintiff's employment at the Kellogg Omaha/Ralston facility.

7. At all relevant times, Defendants were Plaintiff's employer, joint employer, integrated employer, alter ego, agent, predecessor, successor, and/or affiliated entity responsible for the employment practices alleged in this Complaint.

Employment and administrative records identify the relevant employer in varying ways, including Kellogg's, Kellogg Company, WK Kellogg Co., WK Kellogg RTEC, and Kellogg USA LLC. Defendants are collectively referred to as "Kellogg" unless otherwise specified.

8. At all relevant times, Kellogg acted through its managers, supervisors, human-resources personnel, labor-relations personnel, payroll and scheduling personnel, leave administrators, agents, and third-party administrators, including but not limited to MetLife for leave and disability administration.

9. At all relevant times, Kellogg employed sufficient employees to be covered by Title VII, the ADEA, 42 U.S.C. § 1981, and the FMLA, including at least fifty employees within seventy-five miles for FMLA purposes.

## JURISDICTION AND VENUE

10. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the FMLA, Title VII, the ADEA, and 42 U.S.C. § 1981.

11. This Court has jurisdiction under 28 U.S.C. § 1343 over Plaintiff's civil-rights claims under 42 U.S.C. § 1981.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's Nebraska-law claims because those claims arise from the same case or controversy as Plaintiff's federal claims.

13. Venue is proper in the District of Nebraska under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in Nebraska, Plaintiff worked in Nebraska, Defendants operated the relevant facility in Nebraska, and relevant employment records are maintained or administered in Nebraska and/or for a Nebraska facility.

14. Venue is also proper under Title VII's venue provision because the alleged unlawful employment practices were committed in Nebraska, relevant employment records are maintained and administered for the Nebraska facility, and Plaintiff would have continued working in Nebraska but for the unlawful practices alleged herein.

## ADMINISTRATIVE PREREQUISITES

15. Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission and/or the Nebraska Equal Opportunity Commission, including Charge No. 563-2023-03055.

16. The EEOC issued a Notice of Right to Sue. Plaintiff brings this action after issuance of the Notice of Right to Sue.

17. All conditions precedent to the claims asserted herein have occurred, been performed, been satisfied, waived, or are otherwise excused.

18. Plaintiff also asserts claims, including under the FMLA and 42 U.S.C. § 1981, that do not depend on receipt of an EEOC right-to-sue notice.

## FACTUAL ALLEGATIONS

19. Plaintiff began working for Kellogg on or about March 7, 2022, as a production worker at Kellogg's Omaha/Ralston facility. Plaintiff performed production

work, followed plant procedures, and sought to maintain her employment, wages, benefits, and seniority.

20. Plaintiff was hired as an hourly bargaining-unit employee and worked as a packing machine operator with transitional employee status. Plaintiff worked primarily on production lines 401, 402, 307, 105, and 114.

21. Before her October 2024 suspension, Plaintiff had advanced on the transitional seniority list from approximately 44th to approximately 20th and, upon information and belief, was on track to achieve full-time employment status in or around October 2025.

22. Plaintiff came to Kellogg with substantial family ties to the Omaha/Ralston facility and intended to build a long-term career there. Those facts are relevant to Plaintiff's lost seniority, lost employment opportunities, and lost shutdown, transfer, severance, retention, transition, layoff, or recall benefits.

23. Plaintiff is Black and has a medium-brown complexion. Plaintiff's supervisors and management personnel involved in the events alleged herein included non-Black employees. Plaintiff complained about race discrimination, color discrimination, sexual harassment, retaliation, harassment, and unequal treatment in the workplace.

24. Plaintiff also pursued or attempted to pursue internal grievances, EthicsPoint complaints, union processes, EEOC/NEOC proceedings, and other administrative remedies relating to discrimination, harassment, retaliation, workplace safety, leave administration, and disciplinary irregularities.

25. Plaintiff alleges that the harassment and unequal treatment she complained about included ongoing bullying by coworker Kim Davies, a long-tenured employee who maintained a close personal relationship with Operations Director Elda Gonzalez. Plaintiff sought assistance from management and union representatives, but Kellogg failed to take meaningful corrective action.

26. Plaintiff alleges that she was effectively forced to transfer from lines 401 and 402 to line 307 to avoid continued hostility and harassment. Kellogg later attempted to characterize the transfer as voluntary despite the coercive and hostile circumstances surrounding the move.

27. After Plaintiff moved to line 307, Kellogg assigned her duties requiring proficiency with equipment and operations for which she had not received adequate formal training, including the MAV and scale box systems, and then disciplined her for alleged operational errors related to those training deficiencies.

28. After Plaintiff complained, Kellogg issued or caused to be issued discipline and corrective actions against her, including discipline on or about May 17, 2023, June 14, 2023, June 16, 2023, June 19, 2023, and a five-day suspension or related written corrective notice on or about July 6, 2023.

29. The discipline and corrective actions included allegations concerning equipment shutdowns, validation sampling, workmanship, machine operation, training compliance, attendance, and related operational matters. Plaintiff disputes the legitimacy of many of those corrective actions.

30. Plaintiff alleges that Kellogg selectively enforced workplace rules against her, inaccurately represented her training status, relied on inaccurate or procedurally defective disciplinary documentation, and improperly conflated unrelated grievances or incidents to create the false appearance of a pattern of misconduct.

31. Plaintiff also alleges that Kellogg denied her overtime opportunities despite her seniority and eligibility while granting more favorable treatment to less senior employees, male employees, younger employees, non-Black employees, and/or employees with familial relationships inside the plant.

32. Plaintiff repeatedly raised workplace-safety concerns, including concerns regarding machine malfunctions, operational deficiencies, equipment failures, and unsafe production conditions. Plaintiff alleges that after she reported safety concerns and submitted EthicsPoint complaints, Kellogg intensified its scrutiny and retaliatory treatment.

33. Plaintiff grieved discipline and related retaliation. On or about July 24, 2023, Plaintiff filed grievances relating to the retaliatory measures. Upon information and belief, certain grievances were later resolved, overturned, withdrawn, or otherwise not upheld as originally imposed, including grievances addressed on or about December 14, 2023.

34. Upon information and belief, employees and supervisors outside Plaintiff's protected classes, including employees or supervisors identified during the administrative process as Irene Johnson, Cory, and Dave Podrazo, were treated more favorably in connection with comparable or related incidents, training issues, attendance issues, overtime opportunities, supervision, or responsibility for production-line problems.

35. On or about June 29, 2023, Kellogg terminated or removed Plaintiff's husband, Melvyn Felton, from employment. Upon information and belief, Kellogg knew that Melvyn Felton was Plaintiff's husband and that Plaintiff had engaged in protected activity. Plaintiff alleges that the termination of her husband was part of Kellogg's retaliatory response and was reasonably likely to deter a reasonable employee from complaining about discrimination or retaliation.

36. Upon information and belief, Melvyn Felton was terminated during his probationary period for a minor or correctable beard-net or GMP-related issue, while similarly situated employees were treated more favorably. Plaintiff alleges the termination was intended to punish, intimidate, or deter Plaintiff because of her protected activity.

37. Plaintiff also sought and used protected medical leave. In 2023, MetLife and Kellogg documents reflected leave administration for Plaintiff under the plan identified as Kellogg Company RTEC or WK Kellogg RTEC. MetLife documents reflected approval of intermittent leave for Plaintiff during 2023.

38. In 2024, Plaintiff again sought medical leave and short-term disability/leave administration through MetLife for her own serious health condition. MetLife and Kellogg records reflected FMLA eligibility and leave administration beginning in or around March 2024. Plaintiff provided medical certification and communicated with MetLife and Kellogg regarding leave, absence reporting, return-to-work dates, and claim status.

39. In March 2024, MetLife documents identified Plaintiff's employer/plan as WK Kellogg RTEC and advised Plaintiff that she was eligible for FMLA job protection for the relevant leave period while a final decision was pending. Subsequent MetLife activity records reflected that Plaintiff's claim was approved in late March 2024.

40. In April 2024, Plaintiff reported absences and communicated with MetLife and Kellogg regarding her leave. Plaintiff informed MetLife that she had reported absences to her employer and had difficulty entering information in the

online absence-management system. Records later reflected inconsistent treatment of April 2024 leave dates, including leave requests or approvals in Indeavor and later MetLife denials or proof-related issues for some of the same period.

41. Kellogg and/or its agents required Plaintiff to navigate overlapping systems, including MetLife, Kronos, Indeavor, payroll, and internal call-out procedures. Plaintiff alleges that Kellogg had notice of her serious health condition, leave requests, and absence reports, but nevertheless counted protected, reported, approved, pending, or disputed leave-related absences against her.

42. In July 2024, Kellogg issued Plaintiff a written corrective notice related to computer-based training (CBT) even though Plaintiff contends the training was completed, unavailable, miscoded, or otherwise not a legitimate basis for discipline. The timing and circumstances support an inference of retaliation and pretext.

43. In September 2024, Kellogg issued Plaintiff additional written corrective actions or warnings, including for alleged unsatisfactory workmanship and alleged failure to complete training. Plaintiff contends these actions were inaccurate, selectively enforced, and used as part of a retaliatory paper trail after her protected complaints and leave activity.

44. In September 2024, MetLife records reflected absence reporting and/or approval for certain leave-related time, including September 17, 2024 and September 27, 2024. Plaintiff alleges that Kellogg nevertheless used disputed attendance or leave-administration records against her.

45. On or about October 10, 2024, Kellogg suspended Plaintiff pending investigation and/or termination. Kellogg later asserted that attendance points had been assessed and that Plaintiff had reached discharge level under the attendance policy.

46. On October 10, 2024, Plaintiff had reported for her regularly scheduled shift and was performing assigned cleaning duties associated with a scheduled cleaning cycle when she was instructed to report to Human Resources and was informed that she was being suspended pending investigation and possible termination based on alleged attendance violations.

47. In an October 22, 2024 grievance response or labor-relations communication, Kellogg stated that MetLife was the third-party vendor managing FMLA for WK Kellogg and asserted that certain July, August, and September 2024 absences were not reported to MetLife. Kellogg further stated that attendance points had been assessed for those absences, that Plaintiff reached discharge level, and that her suspension pending termination, lost wages, and reinstatement were denied.

48. Plaintiff disputes Kellogg's reliance on those attendance and leave determinations. Plaintiff alleges that Kellogg relied on incomplete, inaccurate, retroactively changed, inconsistent, or selectively applied leave and attendance records, including records from MetLife, Kronos, Indeavor, and Kellogg's own systems.

49. In October 2024, while the suspension and attendance-point dispute were ongoing, Plaintiff advised her union representative that the matter was pending investigation with MetLife to straighten out her points. Union communications reflected inconsistent point totals, including statements that the union representative saw approximately 13 points on one image and 14 points on another and did not know where a higher 19.5-point figure came from.

50. The Nebraska Department of Labor later determined, in connection with Plaintiff's unemployment claim, that Plaintiff had been discharged from her job on October 10, 2024 and that the evidence did not support a finding of misconduct in connection with the work. The Department of Labor determined that no disqualification was assessed based on the separation.

51. Timekeeping and payroll records reflected that Plaintiff was coded as being on OMA Suspension from approximately October 10, 2024 through January 28, 2025, totaling approximately 872 hours and $0.00 in wages for that pay code.

52. After the October 10, 2024 suspension/discharge, Plaintiff continued attempting to obtain records, benefits information, leave information, and clarity regarding her employment status. Kellogg and/or its agents restricted or eliminated Plaintiff's access to systems and records, including Kronos, Indeavor, payroll, benefits, and related employment portals.

53. Before her access was restricted, Plaintiff reviewed internal attendance records, payroll information, audit trails, overrides, punch records, and related system entries. Plaintiff alleges that Kellogg restricted or revoked access shortly after she discovered and documented information contradicting Kellogg's stated reasons for discipline.

54. Plaintiff also experienced substantial difficulty attempting to enroll in annual health benefits and obtain continuation of coverage following her suspension. Plaintiff alleges that Kellogg delayed, obstructed, or failed to timely resolve issues relating to her benefits enrollment and eligibility.

55. On or about December 11, 2024, MetLife advised Plaintiff that she still had available leave hours remaining as of that date. This information conflicted with or undermined Kellogg's position that Plaintiff's leave and attendance status justified termination-level discipline.

56. On or about January 30, 2025, Plaintiff was locked out of online portals or systems she needed to verify her work history, leave status, benefits, employment status, and records. Plaintiff alleges that this system lockout was retaliatory and interfered with her ability to protect her rights.

57. On or about February 3, 2025, Plaintiff's job position on BIB Line 105 was posted. Plaintiff alleges that Kellogg treated her as removed from employment while failing to provide a lawful basis for doing so and while relying on disputed leave, attendance, and disciplinary records.

58. Upon information and belief, Kellogg later withdrew or reversed the discharge and/or removed attendance points during or after labor-relations and union meetings in or around February 2025. Plaintiff alleges that any later withdrawal or point removal confirms that the original suspension and discharge-level action were based on inaccurate, disputed, or pretextual attendance and leave records, and did not remedy the unpaid suspension, lost wages, system lockouts, benefits interference, job posting, or other harms already caused.

59. Kellogg's actions caused Plaintiff loss of wages, overtime opportunities, benefits, seniority, employment rights, health coverage, unemployment and benefit complications, emotional distress, financial instability, eviction-related harm, car repossession-related harm, humiliation, and other damages.

60. Plaintiff attempted to mitigate her damages by seeking unemployment benefits, continuation of benefits, protected leave, and reemployment-related relief;

however, those efforts were delayed, obstructed, denied, or complicated by Kellogg's actions, records, and representations.

61. Plaintiff alleges that Kellogg's conduct also caused damage to reputation, loss of dignity, humiliation, anxiety, depression, emotional anguish, embarrassment, and enduring emotional and psychological harm associated with unemployment, loss of housing stability, financial insecurity, and loss of benefits.

62. At the time Kellogg suspended and treated Plaintiff as discharged, the Omaha/Ralston operation had not yet closed. But for Defendants' unlawful conduct, Plaintiff would have continued earning wages, benefits, seniority, overtime opportunities, and any shutdown, severance, retention, transfer, transition, layoff, or recall benefits available to similarly situated employees.

63. Upon information and belief, employees outside Plaintiff's protected classes, employees who did not complain about discrimination, employees who did not pursue EEOC/NEOC or grievance activity, employees who did not use or request protected leave, and/or employees with comparable or worse attendance, training, workmanship, or performance issues were treated more favorably than Plaintiff.

64. Kellogg's conduct was willful, intentional, retaliatory, and undertaken with knowledge of Plaintiff's protected activity, known leave activity, disputed attendance status, and protected rights, or with reckless disregard for whether its conduct violated those rights.

**COUNT I**
**FMLA INTERFERENCE**
**(29 U.S.C. § 2615(a)(1))**

65. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

66. Plaintiff was eligible for FMLA leave because she had worked for Kellogg for at least twelve months, had worked at least 1,250 hours during the relevant period, and worked at or reported to a covered worksite.

67. Kellogg was a covered employer under the FMLA.

68. Plaintiff had a serious health condition and/or qualifying medical condition for which she sought, used, and/or attempted to use FMLA-protected leave.

69. Plaintiff gave Kellogg and its agents sufficient notice of her need for leave and provided or attempted to provide medical certification and absence information through MetLife, Kellogg's call-out procedures, and Kellogg's scheduling and leave systems.

70. Kellogg interfered with, restrained, or denied Plaintiff's FMLA rights by, among other things, miscounting protected or reported leave as attendance points, failing to properly process or credit leave, relying on disputed leave records, denying restoration, suspending or discharging Plaintiff based on leave-related absences, restricting access to systems necessary to verify leave and employment status, and otherwise discouraging or penalizing Plaintiff's use of protected leave.

71. Kellogg's interference prejudiced Plaintiff and caused damages including lost wages, lost benefits, loss of employment, loss of health coverage or benefit access, financial losses, liquidated damages where available, and other damages recoverable under the FMLA.

72. Kellogg's FMLA violations were willful.

**COUNT II**
**FMLA RETALIATION**
**(29 U.S.C. § 2615)**

73. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

74. Plaintiff engaged in protected FMLA activity by requesting, using, attempting to use, reporting, and/or complaining about protected medical leave and related absence administration.

75. Kellogg took materially adverse actions against Plaintiff after and because of her FMLA activity, including discipline, attendance-point assessment, written warnings, suspension pending termination, effective discharge, denial or obstruction of benefits, lockout from records and systems, and posting of Plaintiff's position.

76. The timing, shifting explanations, inconsistent leave records, disputed attendance coding, retroactive or conflicting documentation, and severity of the adverse actions support an inference that Plaintiff's FMLA activity was a negative factor and/or causal reason in Kellogg's actions.

77. Kellogg's retaliation caused Plaintiff damages including lost wages, lost benefits, loss of employment, emotional distress to the extent recoverable, liquidated damages, interest, attorneys' fees, costs, and other relief available by law.

78. Kellogg's FMLA retaliation was willful.

**COUNT III**
**RACE DISCRIMINATION**
**(42 U.S.C. § 1981)**

79. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

80. Plaintiff is Black and had an employment relationship with Kellogg involving the making, performance, modification, and termination of contracts within the meaning of 42 U.S.C. § 1981, including rights relating to employment, wages, benefits, seniority, overtime, job assignments, discipline, leave administration, and continued employment.

81. Kellogg intentionally discriminated against Plaintiff because of race by treating her less favorably than similarly situated non-Black employees regarding discipline, training enforcement, attendance points, leave administration, overtime opportunities, suspension, discharge, access to records, and employment benefits.

82. Upon information and belief, non-Black employees with comparable or greater attendance, training, workmanship, or performance issues were not subjected to the same escalation, suspension pending termination, effective discharge, or system lockout that Kellogg imposed on Plaintiff.

83. Race was a but-for cause of Kellogg's discriminatory treatment of Plaintiff.

84. As a direct and proximate result, Plaintiff suffered damages recoverable under 42 U.S.C. § 1981, including lost wages, benefits, emotional distress, punitive damages, attorneys' fees where available, and other appropriate relief.

**COUNT IV**
**RACE-BASED RETALIATION**
**(42 U.S.C. § 1981)**

85. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

86. Plaintiff engaged in protected activity under § 1981 by opposing and complaining about workplace discrimination, including discrimination based on race and color, and by pursuing administrative and internal remedies arising from discriminatory treatment.

87. Kellogg knew of Plaintiff's protected activity.

88. Kellogg retaliated against Plaintiff because of her protected activity by escalating discipline, using attendance and leave records against her, suspending her pending termination, treating her as discharged, blocking access to systems and records, interfering with benefits, terminating or removing her husband, and posting her position.

89. Kellogg's retaliatory treatment would deter a reasonable employee from complaining about discrimination or pursuing rights under § 1981.

90. Plaintiff's protected activity was a but-for cause of Kellogg's retaliation.

91. As a direct and proximate result, Plaintiff suffered damages recoverable under 42 U.S.C. § 1981.

**COUNT V**
**RETALIATION**
**(Title VII of the Civil Rights Act of 1964)**

92. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

93. Plaintiff engaged in protected activity under Title VII by opposing discrimination and retaliation, complaining about workplace discrimination and harassment, filing or pursuing EEOC/NEOC proceedings, submitting evidence, pursuing grievances, and otherwise participating in protected processes.

94. Kellogg knew of Plaintiff's protected activity.

95. Kellogg took materially adverse actions against Plaintiff after her protected activity, including discipline, suspension, discharge or effective discharge, denial of wages and benefits, system lockouts, denial of records, termination or removal of her husband, and posting of her job.

96. The temporal sequence, repeated escalation after protected activity, reversal or non-sustaining of certain discipline, inconsistent explanations, disputed leave records, and disparate treatment support an inference of retaliatory causation.

97. Kellogg's retaliation violated Title VII and caused Plaintiff damages.

**COUNT VI**
**RACE, COLOR, AND SEX DISCRIMINATION**
**(Title VII of the Civil Rights Act of 1964)**

98. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

99. Plaintiff is Black, has a medium-brown complexion, and is female, and therefore belongs to protected classes under Title VII.

100. Plaintiff was qualified for her position and performed her job at a level sufficient to meet Kellogg's legitimate expectations, or any alleged deficiency was pretextual, selectively enforced, or caused by Kellogg's unlawful actions.

101. Kellogg treated Plaintiff less favorably than similarly situated non-Black, lighter-complexioned, and/or male employees regarding discipline, training enforcement, attendance, overtime opportunities, leave administration, suspension, discharge, and employment benefits.

102. Plaintiff's race, color, and/or sex were motivating factors in Kellogg's adverse employment actions.

103. As a direct and proximate result, Plaintiff suffered damages recoverable under Title VII.

**COUNT VII**
**AGE DISCRIMINATION**
**(ADEA, 29 U.S.C. § 621 et seq.)**

104. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

105. Plaintiff was over the age of forty at all relevant times.

106. Plaintiff was qualified for her position and was subjected to adverse employment actions, including discipline, suspension pending termination, effective discharge, denial of benefits, system lockouts, and posting of her position.

107. Upon information and belief, younger employees with comparable attendance, training, workmanship, leave, or performance issues were treated more favorably.

108. Plaintiff's age was a but-for cause of Kellogg's discriminatory treatment.

109. As a direct and proximate result, Plaintiff suffered damages recoverable under the ADEA.

**COUNT VIII**
**NEBRASKA CIVIL RIGHTS / STATE-LAW EMPLOYMENT DISCRIMINATION AND RETALIATION**
**(Neb. Rev. Stat. § 20-148 and/or Nebraska Employment-Discrimination Law)**

110. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

111. At all relevant times, Kellogg was an employer covered by Nebraska employment-discrimination law and/or a person or company subject to civil redress under Neb. Rev. Stat. § 20-148.

112. Plaintiff is Black, female, and over the age of forty. Plaintiff engaged in protected activity under Nebraska law by opposing workplace discrimination and retaliation, pursuing internal complaints and grievances, filing or participating in

EEOC/NEOC proceedings, and opposing practices she reasonably believed were unlawful.

113. Kellogg discriminated and retaliated against Plaintiff in the terms, conditions, privileges, and termination of employment, including by escalating discipline, using disputed attendance and leave records against her, suspending or discharging her, restricting access to systems and benefits, and treating similarly situated employees outside her protected classes more favorably.

114. Kellogg's conduct deprived Plaintiff of rights secured by Nebraska law, including Nebraska laws prohibiting discrimination and retaliation in employment. Those rights include protections under the Nebraska Fair Employment Practice Act, including Neb. Rev. Stat. §§ 48-1104 and 48-1114, and, to the extent supported by proof, Nebraska age-discrimination protections including Neb. Rev. Stat. § 48-1004. Plaintiff seeks civil redress for those deprivations under Neb. Rev. Stat. § 20-148 and/or other Nebraska employment-discrimination law.

115. As a direct and proximate result of Kellogg's Nebraska-law violations, Plaintiff suffered damages, including lost wages, lost benefits, lost employment opportunities, emotional distress where recoverable, and other relief permitted by Nebraska law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants and an award of:

A. Back pay, front pay, lost wages, lost overtime, lost benefits, and all other compensation losses;

B. Reinstatement or, if reinstatement is not feasible, front pay and equitable relief;

C. Compensatory damages, including emotional distress and other non-economic damages where recoverable;

D. Liquidated damages, interest, and other relief available under the FMLA;

E. Punitive damages where permitted by law, including under § 1981 and Title VII;

F. Declaratory and injunctive relief;

G. Prejudgment and post-judgment interest;

H. Reasonable attorneys' fees, litigation expenses, and costs where permitted by law;

I. Any shutdown, severance, retention, transfer, transition, recall, layoff, or related benefits Plaintiff would have received but for Defendants' unlawful conduct;

J. Damages, remedies, legal relief, and equitable relief available under Nebraska law; and

K. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

116. Plaintiff demands a trial by jury on all issues so triable.

Dated: August 21, 2026.

Respectfully submitted,

DEAMBER D. O'NEAL-FELTON, Plaintiff,

*By: /s/ John D. Cartier*
John D. Cartier #26307
WITTE LAW OFFICE, PC, LLO
6125 Havelock Avenue
Lincoln, Nebraska 68507
Telephone: 954-319-9832
johncartierlaw@gmail.com
Attorney for Plaintiff